MARK GREEN *vs.* A. J. CARTWRIGHT, S. M. DAMON and C. P. IAUKEA, Trustees of His Majesty.

APPEAL FROM DECISION OF PRESTON, J., DISMISSING BILL IN EQUITY TO ESTABLISH A CLAIM AGAINST HIS MAJESTY.

JULY TERM, 1889.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

The bill set forth that the goods "were provided by said firm (plaintiffs) for and delivered to the order of His Majesty at his request." Held, this precludes the idea that the goods were sold to the King.

The goods were entered up in plaintiff's books to an account called "Funeral account of H. R. H. Likelike." This is evidence that the plaintiff did not give credit to His Majesty. There was no evidence that plaintiff gave credit to His Majesty. Orders for goods were signed "F. H. H., per order." Plaintiff made no inquiry of the King's Ministers, nor of His Majesty, nor of the husband of the deceased as to F. H. H.'s authority to issue the orders.

Held, the plaintiffs expected to be paid by the Government or by a vote of the Privy Council.

OPINION OF THE COURT, BY JUDD, C.J.

Upon a careful consideration of this case we are of opinion that the decision of Mr. Justice Preston thereon, rendered on the 29th June, 1889, should be sustained, and accordingly affirm the decree therein, dismissing the bill.

*A. S. Hartwell,* for plaintiff.

*F. M. Hatch* and *W. A. Whiting,* for defendants.

---

OPINION OF PRESTON, J., REFERRED TO IN THE ABOVE DECISION.

The bill states that the complainant and one Michael Phillips carried on business in Honolulu as importers and dealers in dry goods, clothing, etc., under the firm name of "M. Phillips & Co." until the 25th day of January last, when said Phillips died, when the complainant became, and at the time of filing

the bill was, the sole surviving partner in said firm. That His Majesty, on the 28th day of February, 1887, owed said firm the sum of $9,890.95 for goods and materials theretofore provided by said firm for and delivered to the order of His Majesty, at his request, according to a bill of particulars annexed, and that said sum, together with interest thereon, was then owing to complainant as such surviving partner. That the defendants are trustees, acting under a deed of trust dated the 21st day of November, 1887, whereby, amongst other things, the defendants are required to pay out of their trust funds such claims against His Majesty as should be allowed by a court of competent jurisdiction *pro rata* with such other claims against His Majesty as should appear to defendants to be just, and which should have been presented to them within three months from date of said deed, and that by said deed His Majesty assigned certain property in trust for paying such claims as aforesaid. That said claim was presented to the defendants within said period of three months, but the defendants refused to pay same. And the complainant prayed that such claim should be established and the defendants directed to pay the same *pro rata* with other claims against His Majesty which should have been allowed by the defendants or by a court of competent jurisdiction.

The defendants, by their answer, admit the copartnership of the complainant and M. Phillips, and that the complainant is the sole surviving partner, as set forth in said bill of complaint, and further answer as follows:

"2. And defendants deny that His Majesty Kalakaua, on February 28, 1887, or at any time prior to that date or since, owed plaintiff or his said firm said sum of nine thousand eight hundred and ninety and 95-100 ($9890.95) dollars, or any sum whatsoever, or was in any way indebted to them or either of them, and deny that the goods and materials set forth in the bill of particulars annexed to the complaint were provided for and delivered to the order of His Majesty, or upon his request, and deny any and all liability of His Majesty Kalakaua for or on account of the said claim of plaintiffs. But defendants say

that they are informed and believe, and on such information and belief allege and aver, that the goods and materials mentioned in plaintiffs' claim were provided for the funeral of H. R. H. Likelike, and were ordered by and provided at the request of His Majesty's Ministers and not by His Majesty, and that His Majesty is in no way liable for the same.

"3. And defendants admit that they are the trustees now qualified and acting under a deed of trust of date November 21, 1887, but say that the other matters set forth in the third section of the plaintiff's bill are matters within the deed of trust, and are not correctly set forth, and crave leave to refer to the deed of trust when produced.

"4. And defendants admit that the plaintiff, on behalf of said firm, presented a claim to defendants within the time prescribed by said deed of trust for presenting the same, but say and allege that on or about April 28, 1888, the defendants did reject said claim of plaintiff, as a claim not just against His Majesty, and for which he was not liable.

"5. And defendants further answering, say that among other terms of said deed of trust, it is provided that the trustees shall receive and examine all existing accounts, bills and claims against the grantor (His Majesty David Kalakaua), which shall within three months from date of these presents be presented to them, and shall approve in writing so many and so much of such claims as shall appear to them or a majority of them to be correct and just and properly certified, and shall reject all other claims and parts of claims, and at the end of said three months shall make a written statement or list of all such claims as they shall have approved as aforesaid, to which said list they shall thereafter add only such existing claims against the grantor as shall either be authorized by a court of competent jurisdiction, or be shown to their satisfaction to be just and correct.

"6. And defendants further say and allege that the claim of plaintiff has not been, since its rejection, authorized by a court of competent jurisdiction, nor shown to the satisfaction of defendants to be just and correct.

"Wherefore defendants pray that the plaintiff's bill be dismissed, and the defendants allowed their costs."

The case was heard by me on the 3d of June, when it appeared that the goods for which the claim is made were supplied on the occasion of the funeral of Her late Royal Highness the Princess Likelike, under the following circumstances, as appears by the testimony of Mr. F. H. Hayselden.

Mr. Hayselden was Secretary to the Board of Health, and his testimony is to this effect: That having heard that certain dealers were sending up large quantities of goods to the Palace at pretty high prices, he suggested to Mr. Gibson, then Minister of Foreign Affairs, that it would be better to keep down expenses to have open competition, and that Mr. Gibson told the witness to offer his services to His Majesty, which he accordingly did, as an expert as he described it; His Majesty accepted his services, and Hayselden suggested that it would probably be better for wholesale dealers to send samples to the Palace, to which His Majesty agreed, and the complainant and others were invited to send samples and prices, and His Majesty requested Mr. Hayselden to attend to the matter. The procedure appears to have been that His Majesty would send the parties, to whom goods were to be supplied, with an order to Mr. Hayselden, who would then give the party an order upon the dealer in the following printed form:

"Honolulu, February 21, 1887.

"To M. Phillips & Co.:

"Please furnish to  *  *  *  the following articles and charge the same to account of Funeral Expenses of Her late Royal Highness Princess Likelike:

One black cloth suit, to cost...... ....................... ...... .......... ......... dollars
One black hat, to cost...... ................ ......... ..... .......... , ....... ............. ......   "
One pair of shoes, to cost..... .. ......... ................. ......... ......... ............ ......   "
One white shirt, to cost...... ,......... ......... ...... ..... ... .... ..... ............ ......   "

(Signed)        F. H. HAYSELDEN,

Per order."

Mr. Gibson told Hayselden that he was to keep down the expenses, as this was probably a State funeral, but that the

Government would not authorize more than had been usual. The orders coming in very fast, Hayselden informed Mr. Gibson, who instructed him to tell His Majesty that the Government would not pay any extraordinary bills, but would pay, he thought, what was usually paid, and told Hayselden to keep down the expenses. On this being communicated to His Majesty, the latter said: "I will pay for it if the Government won't." This was not communicated to the complainant, but Hayselden had a new form of order printed, as follows:

"Honolulu, February 22, 1887.

"To M. Phillips & Co.:

"Please furnish to  *  *  *  the following articles and charge the same to account of His Majesty the King, for funeral expenses of Her late Royal Highness Princess Likelike:

One black cloth suit, to cost...............................................................dollars
One black hat, to cost........................................................ ........  "
One pair of shoes, to cost..................................................................  "
One white shirt, to cost.....................................................................  "

(Signed)      F. H. HAYSELDEN,

Per order."

Which form Hayselden testified he showed to His Majesty. This form of order appears to have been issued upon and after the 22d of February, but orders in the first form were also issued up to and including the 27th.

Hayselden made up the accounts and vouchers and handed them to the Minister of the Interior.

Mr. J. A. Cummins, who acted as Marshal of the ceremonies, also gave verbal orders to the complainant's firm for clothes for the pall-bearers and also dress pieces, and orders were also received through the telephone from the Palace for other articles.

The goods delivered under the first orders amount to about $5569; under the second orders, to about $2265; and under orders from Cummins and others, not in writing, to about $2056.

The goods supplied were entered up in complainant's books to an account called "Funeral Account of H. R. H. Likelike," no change being made after the orders in the second form were received.

There are some slight discrepancies in the evidence of Hayselden and Mr. Iaukea, His Majesty's then Chamberlain, as to whether His Majesty instructed them both to act; but I think they are immaterial, as it is certain Hayselden alone signed the orders.

Mr. Green, in his testimony, says that the bill was rendered a few days after the funeral to Hayselden, at his request, at his office. A claim was afterwards made upon the Government, who paid $124 for crape, and the bill was also presented to His Majesty's Chamberlain at the time they (I presume the trustees) advertised for claims. That they had furnished goods for other State funerals, and charged the same to funeral expenses; they were paid sometimes partly by the Government and partly by the estate, as in the case of Queen Emma.

It appears also from the testimony that the goods which were first sent to the Palace, and which caused Mr. Hayselden to speak to Mr. Gibson, were supplied by Mr. Goo Kim, and that His Majesty himself paid for them.

Upon a full consideration of the testimony, I do not think I can declare that the complainant has established his claim. It seems to me that the complainant's firm expected to be paid by the Government or from a vote or appropriation to be made by the Privy Council, as had been done on similar occasions previously. The account was entered as before stated, to " Funeral Expenses of H. R. H. Likelike," even after the second form of order was issued, and I was much impressed with the answer given by Mr. Hartwell in answer to a question I put to him on the subject, that possibly the complainant did not wish to give credit to a person who could not be sued, and I cannot find from the evidence anything which shows that the complainant's firm gave credit to His Majesty.

Although the several orders are signed by Hayselden " per order," it does not appear that the complainant's firm made any inquiry of any of the Ministers, or of His Majesty, or of the husband of the deceased, as to Hayselden's authority to issue the orders, which were issued from his office at the Board of

Health. The mere statement of His Majesty to Hayselden that if the Government would not pay, he would, did not create any liability as between His Majesty and the complainant.

I am still further fortified in my opinion by the fact that the complainant does not, in his bill, or in his petition to perpetuate testimony, allege that the goods were sold to His Majesty, but that they were "provided by said firm for and delivered to the order of His Majesty, at his request." It seems to me that this allegation precludes the idea of a sale.

It seems to me that counsel, who drew the petition, must have made the allegation advisedly, and with the impression that the complainant could not support by evidence a sale of the goods to His Majesty.

I therefore find that the complainant has not established his claim, and dismiss the bill with costs.